# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA I. CASAS,<br><br>                              Plaintiff,<br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>                             Defendants. | Case No. 07cv1124 LAB (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

      Plaintiff Patricia I. Casas has commenced this action against Defendants Midland Credit Management, Inc. and Does 1 through 10, alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the California Rosenthal Act, CAL. CIV. CODE § 1788 *et seq.* Casas now moves for partial summary judgment on her liability claims. (Dkt. No. 17 (June 19, 2008).) For the reasons set forth below, her motion is granted in part and denied in part.

## BACKGROUND

      This action arises from Midland's efforts to collect from Casas approximately $1,100.00 she allegedly incurred on an Aspire Visa account. Between May and October 2006, Midland and Casas exchanged eight letters – five from Midland and three from Casas. Casas claims that Midland sent her dunning letters in violation of the FDCPA and the Rosenthal Act. But Midland argues that its letters constitute legitimate efforts to seek repayment from Casas and to respond to her requests for information. To analyze these competing arguments, a discussion of the eight letters is in order.

**I.     The Letters Between Midland and Casas**

Midland mailed its first letter to Casas on May 5, 2006. (Declaration of Patricia I. Casas ("Casas Decl.") Ex. A.) In that letter, Midland informed Casas that it purchased her Aspire Visa account and offered to settle for a payment of 90% of the $1,037.18 balance. (*Id.*) Casas responded in writing on May 18, 2006, denying that she had an Aspire Visa account. (Casas Decl., Ex. B.) She requested that Midland confirm in writing that it made no negative credit reporting about her. (*Id.*)

In a May 26, 2006 letter responding to Casas' request, Midland stated that it notified credit reporting agencies that she had denied owing the underlying debt. (Casas Decl., Ex. C.) Midland also asked Casas to provide further information to support her denial. (*Id.*) On June 6, 2006, Casas provided Midland with her previous addresses and maiden name, and requested "a copy of the application to [Aspire Visa] showing [her] signature." (Casas Decl., Ex. D.)

Midland, however, did not meet Casas' request in its next letter, dated June 23, 2006. Instead, Midland attached an account statement to that letter. (Casas Decl., Ex. E.) Midland also warned that it was "considering forwarding [the] account to an attorney . . . to initiate legal action to satisfy the debt." *Id.* On July 10, 2006, Casas responded with her own warning that she would sue Midland if it damaged her credit rating. (Casas Decl., Ex. F. )

In an attempt to satisfy Casas' request, Midland sent Casas a three-page statement on July 15, 2006 identifying all the transactions of the purported Aspire Visa account. (Casas Decl., Ex. G.) Midland again demanded payment of the balance. (*Id.*) After receiving no response from Casas for nearly three months, Midland sent its fifth letter to Casas on October 5, 2006. (Casas Decl., Ex. H.) In that letter, Midland offered to settle the dispute for Casas' payment of 75% of the balance. (*Id.*) Midland again stated that it was "considering forwarding the . . . account to an attorney," but assured that it had made "no decision to forward [the] account . . . at this time." (*Id.*)

In addition to sending the five letters, Midland reported Casas' account to a credit reporting agency with the remark "[a]ccount information disputed by consumer." (Casas Decl., Ex. I.) Making good on her warning, Casas commenced this action.

/ / /

/ / /

**II.    Casas' Partial Summary Judgment Motion**

Casas claims that Midland's last four letters violated the FDCPA and in turn, the Rosenthal Act, which incorporates the FDCPA. Dkt. No. 17-2 (June 19, 2008); *see also* CAL. CIV. CODE § 1788.17 . In her view, Midland should have stopped its collection efforts because she disputed the underlying debt in writing. (Dkt. No. 17-2 at 6.) Moving for partial summary judgment, Casas argues that Midland failed to properly investigated her dispute and as a result, violated five FDCPA provisions, including § 1692c's prohibition against communication with disputing debtors and § 1692g's requirement to verify debts. (*Id.* at 6–8.) She also argues that Midland cannot assert a *bona fide* error defense provided in 15 U.S.C. § 1692k(c). (*Id.* at 9–10.)

At the November 5, 2008 hearing on the motion, Midland admitted that it would not rely on the *bona fide* error defense. Both at the hearing and in its opposition papers, Midland argued that the evidence demonstrated that its investigation was proper. To support its argument, Midland submitted a declaration from its employee, Melissa Allen. Allen states that when a customer disputes a debt, Midland seeks information from the seller of the disputed account. (Declaration of Melissa Allen ("Allen Decl.") ¶ 3.) She admits that Midland "rarely, if ever, contacts the original creditor." (*Id.*) She does not provide any information regarding Midland's investigation on Casas' account.

Nor do the deposition transcripts shed any light on Midland's investigation. On this motion, both Midland and Casas rely on the deposition testimony of Angelique Purvis, whom Midland designated to testify on its behalf under Federal Rule of Civil Procedure 30(b)(6). Purvis testified that she did not know whether Midland verified the information on Casas' account. (Dkt. No. 19-4 at 2–4, 6.) She also testified that in response to Casas' dispute, Midland sent the May 26, 2006 request for information and reviewed "the consumer documentation . . . [and] account notes." (*Id.* at 16.) She admitted that Midland did nothing else to investigate Casas' dispute. (*Id.* at 14–16.)

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the moving party, Casas has the burden to demonstrate the absence of a factual issue for trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, she may show that Midland lacks evidence to support its case. *Id.* at 325. If she makes this showing, Midland must go beyond the pleadings and set forth "specific facts" to show a genuine issue for trial. *Id.* at 324.

On this motion, the Court considers the record as a whole and draws all reasonable inferences in the light most favorable to Midland. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). In considering the record, the Court may not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Not all alleged factual disputes will serve to forestall summary judgment; such disputes must be both material and genuine. *Id.* at 247–49.

**II.     Midland's Liability Under 15 U.S.C. §§ 1692c and 1692g**

The FDCPA imposes strict liability on debt collectors, with the *bona fide* error defense as a "narrow exception." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006). Here, the record demonstrates that Midland took two steps in investigating Casas' dispute: (1) sending Casas the May 26, 2006 letter requesting that she provide further information; and (2) reviewing "the consumer documentation . . . [and] account notes." (Dkt. No. 19-4 at 16.) Purvis, Midland's Rule 30(b)(6) witness, testified that Midland did nothing else to respond to Casas' dispute. (Dkt. No. 19-4 at 14–16.) No evidence shows that Midland made any effort to comply with Casas' request for a copy of the application for the purported Aspire Visa account. Nor does the evidence show that Midland verified Casas' account. (Dkt. No. 19-4 at 2–4, 6; *see also* Allen Decl. ¶ 3.)

The evidence demonstrates that Midland violated § 1692c and § 1692g. Under § 1692c, Midland is prohibited from communicating with Casas once she "notifies . . . in writing that [she] refuses to pay" the alleged debt. 15 U.S.C. § 1692c(c). Midland's argument that Casas' May 18, 2006 letter does not constitute a written notice of refusal to pay fails as a matter of law because the letter makes clear she has no intention of paying and wants the debt cleared from her record:

/ / /

/ / /

> I have never had a Visa with Aspire Visa, I dispute the validity of this debt. This debt doesn't belong to me, please check your records to find the right person. I hope my credit report has not been altered by your company otherwise, I'll need to take legal actions.
>
> I need you to provide me within 2 weeks a letter of verification that my credit report is clear regarding this matter.

As a result, Midland violated § 1692c by sending additional demand letters to Casas. *See Clark*, 460 F.3d at 1177 (imposing strict liability on debt collectors). Moreover, § 1692g requires Midland to cease collection until it "obtains verification of the debt." 15 U.S.C. § 1692g(b).

Midland contends Casas actually requested further communication, which is partially true. Casas did ask Midland to send a letter verifying that the charge had been removed from her credit report (Casas Decl., Ex. B.) In reply, Midland asked her to send "canceled checks, paid letters, police reports, or any other documentation you may have to support your claim . . . ." (*Id.*, Ex. C.) Casas sent Midland her current address (for the past five years) and her previous address (for the previous seven years) as well as her full maiden name, adding "[i]f your agency is not satisfied with the information I provided you with, I will strongly request your agency to provide me with a copy of the application to ASPIRE VISA showing my signature." (*Id.*, Ex. D.) Midland contends this request amounts to an invitation to send its letter of June 23, 2006 . (Dkt. No. 22 at 8:5–7.) Midland characterizes this letter as a request "to provide the additional account details . . . ." (*Id.* at 8:6–7.) This grossly misrepresents the June 23 letter, which contains no request for additional account details and instead repeatedly demands immediate payment and threatens legal action. (Casas Decl., Ex. E at 1–2.) The uncontroverted evidence shows Casas did not ask Midland to send such a letter and in fact made clear she expected Midland to cease its collection attempts.

Midland attempts to characterize this as a case of identity theft, (Dkt. No. 22 at 8:26–9:1), which it was not; Casas' contention in her correspondence with Midland was merely that the account was not hers. The only available information suggests Casas believed Midland had confused her with the actual account holder. (Mayers Decl. at 17:2–25 (Purvis Depo. Tr. page 46, discussing record of Casas' husband calling to say Midland was contacting the wrong person).)

Midland unreasonably attempts to fault Casas for failing to provide all possible information. For instance, Midland argues that its letter of July 15, 2006 should have prompted Casas to say she

1  had never been to Texas and had never made any charges to a company in Texas. (Dkt. No. 22 at
2  8:1–5.) This is irrelevant for several reasons. First, Midland had already violated the FDCPA by the
3  time it sent this letter. Second, Plaintiff had already told Midland she lived in California for the last
4  twelve years and the account was not hers, which Midland rejected out of hand. There would have
5  been little point in Casas telling Midland the charges, made in Texas during October and November
6  of 2004, were not hers. (*See* Casas Decl., Ex. G (Transaction History).)

7  Midland cites Casas' Exhibit I as evidence Casas provided an address on Monterey Avenue,
8  which conflicted with the two previous addresses she provided to Midland. (Mayers Decl. in Supp.
9  of Opp'n to Mot. for Summ. J., ¶ 5.) Exhibit I, however, is a single page from a credit report showing
10 Midland had reported Casas as having a debt in collection; none of Casas' reported addresses are
11 shown. Furthermore, even if the entire credit report were in evidence and attested to by a competent
12 witness, and showed a reported address on a Monterey Avenue, this would not mean Casas was lying
13 about her two previous addresses. Rather, it would merely mean someone reported that as Casas'
14 address.

15 Midland also finds fault with Casas for failing to anticipate and submit the information it
16 claims it would have needed to verify the account was not hers, such as a social security number,
17 driver's license, or passport. (Dkt. No. 22 at 10:11–13.) Midland, however, asked for different
18 information, (Casas Decl., Ex. C), and Casas had no reason to send such documents spontaneously.

19 Casas' uncontroverted evidence shows she was not the account holder and did not owe the
20 debt. (Casas Decl., ¶ 11.) Had Midland attempted to verify the debt, it undoubtedly would have
21 discovered information showing whether what Casas said was true; in particular, Midland made no
22 effort to obtain the original credit application bearing the signature of the credit applicant as Casas
23 requested. The evidence shows Midland's effort consisted of sending letters to Casas, reviewing
24 information Casas sent, reviewing account notes, and obtaining a transaction history from Aspire Visa
25 (Ex. G to the Casas Decl.), which it sent to Casas. (Mayers Decl., Ex. 1 at 16:5–17:1, 21:19–22:16
26 (pages 45–46, 95–96 of Purvis Depo. Tr.); *see also* Opp'n to Mot. for Summ. J. at 6:19–22
27 (acknowledging Midland sent Casas all documents it received from Aspire Visa).) Midland presents
28 evidence it routinely contacts the seller of the debt and sometimes the original creditor (Allen Decl.,

¶ 5), but it obtained no additional information by doing so in this case. (*See* Opp'n to Mot. for Summ. J. at 6:7–9 (acknowledging no letter was sent to the seller of the debt or to the original creditor)). The transaction records in Exhibit G are unremarkable; they do not show any identifying details of the Patricia Casas whose account it was. In any event they were sent to Casas after the first FDCPA violation had already taken place.

In short, the uncontroverted evidence shows Midland made no real effort to verify the debt before continuing with its collection efforts. Midland's course of action consisted of nothing more than telling Casas to provide information showing the debt was not hers, disbelieving her information for no clear reason, and insisting on immediate payment. Because the evidence shows that Midland failed to take any meaningful steps to verify Casas' disputed account, Midland is liable for violating § 1692g. *Cf. Clark*, 460 F.3d at 1174 (denying summary judgment on the debtor's § 1692g claim because "upon [the debtor's] request for verification, [the debt collector] obtained information from [the original creditor] about the nature and balance of the outstanding bill").

In opposition to Casas' motion, Midland fails to cite any applicable authority. Arguing that it did not violate § 1692c, Midland relies on two district court decisions: *Trull v. GC Services Limited Partnership*, 961 F. Supp. 1199 (N.D. Ill. 1997); and *Rabideau v. Management Adjustment Bureau*, 805 F. Supp. 1086 (W.D.N.Y. 1992). *Trull* and *Rabideau*, however, do not address § 1692c violations. Thus, Midland's reliance on these cases is misplaced.

In summary, Casas has met her burden to eliminate issues of fact regarding her claims under § 1692c and § 1692g. Midland fails to set forth "specific facts" to show a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. Accordingly, Casas' motion for partial summary judgment is **GRANTED** with respect to her claims under § 1692c and § 1692g. Because Casas fails to set forth sufficient factual and legal basis for her claims under other FDCPA provisions, her motion is **DENIED** with respect to those claims.

/ / /

/ / /

/ / /

/ / /

### III. Other Issues

#### A. Casas' Request to Disregard Allen's Declaration

In her reply brief, Casas requests that the Court disregard Allen's declaration as a sanction for Midland's failure to designate a witness with sufficient knowledge in compliance with Rule 30(b)(6). The Court declines to do so for two reasons.

First, Casas has not established that Midland's designation of Purvis as a corporate witness violated Rule 30(b)(6). Although she points to Purvis' lack of knowledge on certain topics, such as the purchasing process, the record demonstrates that Purvis was knowledgeable regarding Midland's practices and the underlying transactions. (*See*, *e.g.*, Dkt. No. 23 at 7–9.) Thus, Purvis' failure to answer some questions does not disqualify her from testifying on Midland's behalf under Rule 30(b)(6). *Alexander v. F.B.I.*, 186 F.R.D. 137, 141 (D.D.C. 1998) (Lamberth, J.) (denying a motion to re-designate a Rule 30(b)(6) witness despite the witness' inability to answer some questions).

Second, Allen's declaration does not contradict Purvis' testimony. This case is therefore distinguishable from the authority Casas cites in which parties were precluded from using affidavits that contradicted their employees' testimony. *See*, *e.g.*, *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (Barbier, J.). Accordingly, Casas' request to disregard Allen's declaration is **DENIED**.

#### B. Midland's Request for Entry of Summary Judgment

In its opposition, Midland requests that the Court enter summary judgment in its favor. This request suffers from both procedural and substantive defects. In terms of procedure, the request is improper because Casas has no opportunity to respond. *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 495 (9th Cir. 2000) (declining to enter summary judgment to non-movant). In terms of substance, Midland fails to submit any evidence to support its request. As a result, Midland's request for entry of summary judgment is **DENIED**.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION AND ORDER**

For the reasons set forth above, Casas' motion for partial summary judgment is **GRANTED** with respect to her claims under 15 U.S.C. §§ 1692c and 1692g and the Rosenthal Act, and **DENIED** with respect to her remaining claims.

**IT IS SO ORDERED**.

DATED: January 29, 2009

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge